HOJEIJE v DEPARTMENT OF TREASURY

Docket Nos. 239172, 247444. Submitted May 12, 2004, at Detroit. Decided August 19, 2004, at 9:00 A.M.

Mohammad Hojeije and VIP Smokers' Choice, Inc., doing business as Great Lakes Wholesale, Inc., brought actions in the Wayne Circuit Court against the Department of Treasury and its employee and two assistant attorneys general who obtained a jeopardy warrant entitling the department to seize property of a delinquent taxpayer and against department employees who executed the search and seizure under the warrant. The warrant was for tobacco products and other assets owned by Simons Brothers Wholesale, Inc. The search and seizure were conducted in Dearborn at a facility occupied by both the plaintiffs and Simons, the delinquent taxpayer. Over the plaintiffs' offers of documentation, substantial amounts of plaintiffs' product were removed in spite of Simons being the target of the search. Much of plaintiffs' seized product was returned, but plaintiffs claimed to have suffered business-related damages and claim the executing department employees acted in a grossly negligent manner and the authorizing agents acted in an unreasonable manner. The agents executing the warrant claimed governmental immunity to shield them from the gross negligence claims. The court, Gershwin Drain, J., denied summary disposition for the executing agents because of the documentary information supplied them during the search (Docket No. 239172). The plaintiffs claimed that the authorizing agents acted with gross negligence and also that they violated plaintiffs' constitutional rights under 42 USC 1983 by the deprivation of rights or privileges secured by the Constitution or laws while acting under color of state law. The court denied summary disposition for these defendants on the basis that they had adequate information to know that the separate entities within the same facility were not related and, therefore, the authorizing defendants acted unreasonably and without regard for the potential for injury to the plaintiffs (Docket No. 247444). The defendants appealed and their appeals were consolidated.

The Court of Appeals *held*:

1. Each executing defendant was a government employee acting within the scope of his authority and in the exercise of a governmental function. The executing defendants had been presented with evidence of the plaintiffs' ownership of some of the tobacco products seized, but they did not act in a grossly negligent manner because the evidence did not show that they simply ignored the information or that they could have halted the seizure. The specific evidence in this case does not suggest that the defendants acted so recklessly as to demonstrate a substantial lack of concern for whether an injury resulted from executing the jeopardy warrant. MCL 691.1407(2). The executing defendants telephoned the authorizing agents five times and had the authorizing agents call the plaintiffs' attorney, but simply did not have time to match each item of inventory seized with new documentation presented during the search. The executing defendants demonstrated no gross negligence; the circuit court erred in denying their request for summary disposition.

2. Each authorizing defendant was a government employee acting within the scope of his authority and in the exercise of a governmental function. There was sufficient evidence presented to believe that there would be inventory of Simons present, and there was sufficient documentation leading to the reasonable conclusion that Simons Brothers was not a totally separate entity from the plaintiffs to obviate a finding that the authorizing agents were grossly negligent. The existence of some evidence that might have contradicted the decision to conduct the seizure did not transform the decision into an act of substantial disregard for whether the authorization of the search would cause the plaintiffs' injury.

3. The plaintiffs' 42 USC 1983 action claimed that the authorizing agents deprived the plaintiff's of rights, privileges, or immunities secured by the United States Constitution and laws. As a defense, a government officer may invoke the defense of qualified immunity to avoid the burden of standing trial. In a § 1983 suit, the plaintiff bears the burden of establishing that a reasonable official in the defendant's position could not have believed that his conduct was lawful. The Fourth Amendment secures the right to be free from unreasonable searches and seizures, and, for that reason, a government official generally must obtain a search warrant supported by probable cause. In this case, the authorizing agents had probable cause, a substantial basis for inferring a fair probability, to believe that Simons tobacco product inventory would be found at the address searched. There was evidence that the plaintiffs' and Simons were separate entities, but there was also evidence that plaintiffs' had made efforts to create

the appearance of a merger with Simons. No reasonable official in the position of the authorizing defendants could have believed that his conduct was unlawful, so the circuit court erred by denying the defendants' motion for summary disposition.

Reversed.

*Raymond & Prokop, P.C.* (by *Charles S. Rudy, David B. Viar,* and *Kevin E. Sralla*), for the plaintiffs.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Mark E. Donnelly,* Assistant Attorney General, for the defendants.

Before: OWENS, P.J., and KELLY and R. S. GRIBBS*, JJ.

R. S. GRIBBS, J. These consolidated appeals arise from the Department of Treasury's August 7, 2000, seizure of tobacco products from a business at 6800 Greenfield Road in Dearborn, operated by plaintiff Mohammad Hojeije under the names VIP Smokers' Choice, Inc. (VIP), doing business as Great Lakes Wholesale, Inc. In Docket No. 239172, defendants William Fryer, John Gurka, and Manuel Rodriguez, employees of the Department of Treasury, appeal by leave granted from a circuit court order that partially denied their motion for summary disposition premised on governmental immunity with respect to a gross negligence claim alleged by plaintiffs. In Docket No. 247444, defendants Estes D. Brockman and Daniel M. Levy, assistant attorneys general, and Walter A. Fratske,[1] a Department of Treasury employee, appeal as of right from a circuit court order that denied their motion for summary disposition

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

[1] The parties spell Fratske's last name as both "Fratske" and "Fratzke," but, at deposition, Mr. Fratske spelled his last name as "Fratske." That spelling is used in the body of this opinion.

of plaintiffs' complaint, which alleged federal consti-
tutional violations under 42 USC 1983 and gross
negligence. We reverse in both appeals.

I

Defendants all participated either in the authoriza-
tion or the execution of jeopardy assessments and
warrants pertaining to the seizure of property from
6800 Greenfield. The jeopardy warrants, which entitle
the Department of Treasury to seize the property of
delinquent taxpayers in certain circumstances,[2] pro-
vided for the department to take property belonging to
Simons Brothers Wholesale, Inc., a wholesaler of to-
bacco products based in Ishpeming; Loren Anderson,
the owner of Simons Brothers; and Terry Anderson,
Loren's son. Brockman, Levy, and Fratske decided to
authorize the August 7, 2000, jeopardy assessments and
warrants for 6800 Greenfield on the basis of their belief
that VIP/Great Lakes and Simons Brothers had engaged
in some type of business relationship, and that they
would therefore find property belonging to Simons

---

[2] The Department of Treasury's authority to issue jeopardy assess-
ments and warrants appears within MCL 205.26, which currently pro-
vides, in relevant part:

If the state treasurer or the state treasurer's designated
representative finds that a person liable for a tax administered
under this act intends quickly to depart from the state or to
remove property from this state, to conceal the person or the
person's property in this state, or to do any other act tending to
render wholly or partly ineffectual proceedings to collect the tax
unless proceedings are brought without delay, the state treasurer
or the state treasurer's designated representative shall give notice
of the findings to the person, together with a demand for an
immediate return and immediate payment of the tax. A warrant or
warrant-notice of levy may issue immediately upon issuance of a
jeopardy assessment. In that instance, the tax shall become
immediately due and payable.

Brothers in Dearborn.[3] Brockman and Levy ultimately decided to return to plaintiffs nearly all the inventory seized on August 7, 2000.

We must determine whether Brockman, Levy, and Fratske reasonably reached their conclusion to authorize the August 7, 2000, search and seizure, and whether they or Fryer, Gurka, and Rodriguez acted with gross negligence in performing the search and seizure.

II

In Docket No. 239172, Fryer, Gurka, and Rodriguez contend that the circuit court erroneously refused to apply governmental immunity to shield them from plaintiffs' gross negligence claim. This Court reviews de novo a circuit court's summary disposition ruling. *Maskery v Univ of Michigan Bd of Regents*, 468 Mich 609, 613; 664 NW2d 165 (2003).

> Under MCR 2.116(C)(7), summary disposition is proper when a claim is barred by immunity granted by law. To survive such a motion, the plaintiff must allege facts justifying the application of an exception to governmental immunity. [The reviewing court] consider[s] all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them. [*Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001) (citations omitted).]

Fryer, Gurka, and Rodriguez's claim of entitlement to governmental immunity derives from MCL 691.1407(2), which provides, in relevant part:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the

---

[3] Before the August 7, 2000, seizure at 6800 Greenfield in Dearborn, defendants had conducted a search and seizure at Simons Brothers' main warehouse in Ishpeming and a simultaneous seizure of business records from 6800 Greenfield.

conduct in question, each officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the officer [or] employee . . . while in the course of employment or service . . . if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's [or] employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

"[E]vidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Maiden v Rozwood*, 461 Mich 109, 122-123; 597 NW2d 817 (1999).

Having reviewed the documentary evidence supplied in this case, we conclude that the circuit court incorrectly denied the motion for summary disposition filed by Fryer, Gurka, and Rodriguez (the executing defendants), who constituted members of the team that entered 6800 Greenfield and seized nearly all plaintiffs' tobacco inventory on August 7, 2000.

The available documentary evidence does not support a reasonable inference that the executing defendants conducted themselves in a grossly negligent manner during the seizure. While plaintiffs' complaint alleged that the execution defendants exhibited gross negligence when they conducted the seizure of plaintiffs' inventory even after plaintiffs had presented evidence establishing their proper ownership of the tobacco products, the evidence does not establish that the

executing defendants simply ignored the information or that they could have halted the seizure.

After reviewing the record, we conclude that reasonable minds could not differ regarding whether the executing defendants committed any gross negligence with respect to the August 7, 2000, search and seizure. The available evidence indicates that Fryer, Gurka, and Rodriguez did not participate in the issuance of the jeopardy warrant pursuant to which the agents seized plaintiffs' inventory on August 7, 2000, and that none of the executing defendants had authority to question the collections division's issuance of the warrant. Further, the evidence does not suggest that the executing defendants acted unreasonably in executing the jeopardy warrant: (1) before the August 7 seizure, Fryer expressed his concerns to Brockman regarding the separate presence of VIP at 6800 Greenfield and the fact that the seizure did not coincide with the prior seizure of products at Simons Brothers' Ishpeming warehouse, and Fryer received advice to seize property not belonging to VIP; (2) when plaintiffs' attorney Thomas Kenney arrived at 6800 Greenfield, Gurka telephoned Levy and had him speak with Kenney regarding his concerns; (3) Gurka reviewed plaintiffs' invoices at 6800 Greenfield and made at least five telephone calls to Brockman and Levy relaying to them the information on the invoices and inquiring of them how to proceed, before receiving direction to seize products connected to Simons Brothers and Great Lakes, but not to take any property belonging to VIP; (4) to the extent that Fryer refused Kenney's telephone request to halt the improper seizure of VIP merchandise, Fryer relied on Brockman's advice that the executing team could take property that did not belong to VIP; and (5) to the extent that Fryer at some point declined Kenney's offer to padlock 6800

Greenfield pending a review of the available documen-
tation concerning the inventory, he acted pursuant to a
departmental policy to prevent the disappearance or
theft of cigarettes and liquor, and Brockman testified
that he decided to deny plaintiffs' offer after speaking
with Fryer. This evidence does not afford a basis from
which a reasonable juror could find that the executing
defendants conducted the search and seizure "so reck-
less[ly] as to demonstrate a substantial lack of concern
for whether an injury result[ed]" to plaintiffs. MCL
691.1407(2); *Maiden, supra* at 122-123; see also *Stein v
Michigan Employment Security Comm*, 219 Mich App
118, 125; 555 NW2d 502 (1996) (in affirming summary
disposition of the plaintiffs' gross negligence claim
against an MESC investigator, this Court rejected the
plaintiffs' argument that because the investigator was
given information by the plaintiffs' current and former
employees regarding the plaintiffs' lack of involvement
in the fraud being investigated, the investigator was
grossly negligent in seeking a search warrant; this
Court explained that the investigator's decision to pur-
sue an investigation in the face of contradictory infor-
mation did not constitute an act of bad faith).

Because plaintiffs' allegations and the documentary
evidence demonstrated no gross negligence by the ex-
ecuting defendants, the circuit court erred in denying
defendants' motion for summary disposition pursuant
to MCR 2.116(C)(7). *Jackson v Saginaw Co*, 458 Mich
141, 146-147, 152; 580 NW2d 870 (1998).

III

In Docket No. 247444, Brockman, Levy, and Fratske
argue that the circuit court erred in denying their
motion for summary disposition of plaintiffs' § 1983
claim pursuant to MCR 2.116(C)(7) and (10). We review

de novo the circuit court's summary disposition ruling. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). In reviewing a motion under MCR 2.116(C)(10), this Court considers de novo, and in the light most favorable to the nonmoving party, all pleadings, admissions, affidavits, and other relevant documentary evidence of record to determine whether any genuine issue of material fact exists to warrant a trial. *Id.*; MCR 2.116(G)(5).

According to 42 USC 1983, any person who experiences "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" because of the actions of another person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" may file an action seeking relief against the party that caused the deprivation. "In a suit against an officer for an alleged violation of a constitutional right," however, the officer may invoke the defense of qualified immunity to avoid the burden of standing trial. *Saucier v Katz*, 533 US 194, 200; 121 S Ct 2151; 150 L Ed 2d 272 (2001); see also *Lomaz v Hennosy*, 151 F3d 493, 496-497 (CA 6, 1998). In *Saucier, supra* at 201-202, the United States Supreme Court described the following standards for applying the protection of qualified immunity:

> A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . .
>
> [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and

it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable.

In this litigation, for instance, there is no doubt [of] . . . the general proposition that the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough. Rather, we emphasized . . . "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.* [Emphasis added; citations omitted.]

Stated slightly differently, the plaintiff attempting to overcome qualified immunity in a § 1983 action bears the burden of establishing that a "reasonable official in the defendant['s] position could [not] have believed that his conduct was lawful . . . ." *Cope v Heltsley*, 128 F3d 452, 459 (CA 6, 1997) (citation omitted).

The first consideration therefore involves whether, taken in the light most favorable to plaintiffs, the actions of Brockman, Levy, and Fratske in authorizing the seizure of plaintiffs' inventory violated plaintiffs' constitutional rights. To justify the invasion of an individual's Fourth Amendment right to remain secure against unreasonable searches and seizures, a government official generally must obtain a warrant supported by probable cause. *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). "Probable cause to issue a search warrant exists where there is a 'substantial basis' for inferring a 'fair probability' that contraband or evidence of a crime will be found in a particular place." *Id.* at 417-418 (citation omitted).

After reviewing the documentary evidence and deposition testimony submitted in this case, we conclude that the following evidence amply establishes that defendants had probable cause for believing that Simons Brothers inventory would be found at 6800 Greenfield on August 7, 2000: (1) in late 1999 and early 2000, Hojeije and Ali El-Hallani, an employee of VIP, commenced negotiations with Terry Anderson as they searched for someone to help them overcome a damaging handicap in the secondary wholesale tobacco business (several tobacco manufacturers refused to accept or recognize the invoices of Great Lakes Wholesale because plaintiffs had not established a system for electronically reporting the invoices to the tobacco manufacturers and, therefore, the customers of Great Lakes Wholesale could not obtain with their Great Lakes Wholesale invoice a $2 to $8 a carton rebate that the tobacco manufacturers provided for receipts from other, recognized wholesalers); (2) Hojeije, El-Hallani, and Anderson discussed the notions that VIP/Great Lakes could purchase large quantities of tobacco products from Simons Brothers, and that if things worked out, Great Lakes and Simons Brothers could eventually merge; (3) Hojeije and El-Hallani admitted that in service of the goal of tobacco manufacturer acceptance of Great Lakes invoices, Great Lakes' sale of products generated invoices reading "Simons Brothers" from a separate cash register at 6800 Greenfield devoted to wholesale business by Simons Brothers; (4) plaintiffs ordered tobacco from some distributors under the name "Simons Brothers"; (5) in late 1999 or early 2000, Hojeije and Simons Brothers executed a lease of part of the store space at 6800 Greenfield to Simons Brothers; (6) in February 2000, Hojeije mailed a letter to the Department of Treasury apprising it of Simons Brothers' lease of a portion of 6800 Greenfield and its new

Dearborn operation; (7) Terry Anderson sought from the department a tobacco tax license for the Simons Brothers' branch at 6800 Greenfield; (8) Simons Brothers successfully obtained a tobacco tax license for 6800 Greenfield, where the license was displayed; (9) through July 18, 2000, plaintiffs changed the awning at 6800 Greenfield to read "Simons Brothers"; (10) a written operation agreement existed between Great Lakes and Simons Brothers, although it remained unsigned; (11) some documents seized either from 6800 Greenfield or the Simons Brothers warehouse in Ishpeming on July 18, 2000, reflected that Simons Brothers had leased a warehouse in Indiana, on which El-Hallani bought an insurance policy for "Simons Brothers, Detroit"; (12) Hojeije and El-Hallani prepared advertisements that expressly proclaimed Simons Brothers' takeover of Great Lakes and its new Dearborn operation; and (13) at an August 1, 2000, Marquette Circuit Court hearing, during which Simons Brothers challenged the jeopardy assessments and warrants issued in Ishpeming on July 18, 2000, the testimony of Loren Anderson and Simons Brothers employees declared that Simons Brothers had merged with Great Lakes, and that Simons Brothers therefore had a Dearborn operation that possessed a large tobacco inventory and substantial amounts of cash.

In light of all this information, to which Brockman, Levy, and Fratske had access, we cannot conclude that they lacked a substantial basis for inferring the fair probability that they would find tobacco products belonging to Simons Brothers at 6800 Greenfield. *Kazmierczak, supra* at 417-418. Even had Brockman, Levy, and Fratske reviewed the documentation that plaintiffs now assert they negligently or recklessly failed to consider, they still would have had probable cause that Simons Brothers' inventory existed at 6800 Greenfield

on August 7, 2000. Plaintiffs assert that Brockman, Levy, and Fratske could have ascertained that (1) corporate records filed in Lansing reflected that VIP did business as Great Lakes, and Hojeije was VIP's registered agent; (2) VIP filed a tobacco tax return under its own name in March 2000; (3) Simons Brothers and Great Lakes maintained separate tobacco licenses at 6800 Greenfield; (4) Simons Brothers maintained some records of "aged receivables" that documented amounts owed by Great Lakes and invoices showing sales of tobacco to Great Lakes; and (5) plaintiffs entered a lease with Simons Brothers, wrote checks from Great Lakes to Simons Brothers, and wired money from Great Lakes to Simons Brothers. These documents reflect that plaintiffs sometimes continued to treat Great Lakes and Simons Brothers as legally distinct entities. But the fact that Simons Brothers and Great Lakes might have maintained some legal separation does not negate the reasonable possibility that the two entities had conducted some perhaps less formal or illegitimate species of joint operation from 6800 Greenfield and tobacco products belonging to Simons Brothers would be found at 6800 Greenfield—especially given the above, abundant evidence that suggested some relationship between plaintiffs and Simons Brothers.

In arguing that Brockman, Levy, and Fratske unreasonably searched and seized tobacco products from 6800 Greenfield, plaintiffs also rely heavily on the invoices they presented the executing agents and Brockman on August 7, 2000, which, according to plaintiffs, showed that "virtually all of the merchandise . . . had been sold by Martin & Snyder or Sam's Club . . . to 'Great Lakes Wholesale' or 'VIP Smokers, d/b/a Great Lakes Wholesale.' " Brockman stated that he directed Gurka to seize merchandise that matched invoices with the name Great Lakes on the basis of the

evidence of the interrelationship between Simons Brothers and Great Lakes, explaining, "I had reasonable cause to believe at that point that they were the same entity." Levy similarly opined as follows regarding the Great Lakes invoices:

> I would have said then, continue to say now, it doesn't mean anything. If Simon [sic] Brothers, as the testimony had been under oath, sworn and concluded by the judge, if Simon [sic] Brothers and Great Lakes were the same company, then the fact that [the inventory] was bought under the name of Great Lakes didn't mean anything. And if the money that was there on the date of the search warrant and the stock that was there on the date of the search warrant in July had been rolled over three times, and it was still into that stock, the stock was still the property of Simon [sic] Brothers.

> &ast; &ast; &ast;

> They could have produced a million invoices showing that the merchandise that was on the site at that moment in time had all been purchased from the Sam's Club on the corner. I could have believed every one of those invoices was true. As long as those invoices identified the purchaser as Great Lakes Wholesale, which was in my mind at the time Simon [sic] Brothers, then it was seizable property. It wasn't because it had been laying around or because it had been shipped from Ishpeming. It was because it was owned by Simon [sic] Brothers or the Andersons and, therefore, subject to seizure.

Fratske also believed that Great Lakes and Simons Brothers were one and the same. In light of the evidence that created the illusion that Great Lakes and Simons Brothers qualified as the same, merged entity, we cannot conclude that the invoices deprived Brockman, Levy, and Fratske of a reasonable basis for concluding on August 7, 2000, that Simons Brothers had

property at 6800 Greenfield, albeit in the name of Great Lakes. *Kazmierczak, supra* at 417-418.

In summary, we conclude that the evidence in this case, considered in the light most favorable to plaintiffs, fails to establish that Brockman, Levy, and Fratske violated plaintiffs' Fourth Amendment rights.[4] *Saucier, supra* at 201. Even assuming that Brockman, Levy, and Fratske unreasonably ignored or misunderstood the import of plaintiffs' proffered invoices and other documents that allegedly demonstrated the separate legal existence of Great Lakes and Simons Brothers, in light of all the contradictory evidence derived from plaintiffs' efforts to create the appearance of a merger between Great Lakes and Simons Brothers and the other circumstances of this case, we cannot conclude that in authorizing the August 7, 2000, seizure (1) it should have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *id.* at 202, or (2) that no "reasonable official in [Brockman's, Levy's, or Fratske's] position could have believed that his conduct was lawful . . . ." *Cope, supra* at 459. Accordingly, Brockman, Levy, and Fratske have qualified immunity from plaintiffs' § 1983 action, and the circuit

---

[4] Plaintiffs also complain that the allegedly wrongful seizure of their property violated their due process rights. In *Young v Barker*, 158 Mich App 709, 722; 405 NW2d 395 (1987), this Court recognized "that detention pursuant to a valid warrant in the face of repeated protests of innocence will, after the lapse of a certain amount of time, deprive an accused of liberty without due process of law." But this Court held that, because probable cause existed to support a defendant officer's arrest of the plaintiff, the plaintiff's claims of a violation of her right to remain free from deprivations of liberty without due process of law lacked merit. *Id.* In this case, Brockman, Levy, and Fratske had probable cause to authorize the search and seizure at 6800 Greenfield on August 7, 2000, and the parties do not dispute that Brockman and Levy subsequently agreed to return nearly all the seized property to plaintiffs. Under these circumstances, no due process violation occurred.

court erred by denying their motion for summary disposition of this claim pursuant to MCR 2.116(C)(10). *Saucier, supra* at 200-202.

IV

Brockman, Levy, and Fratske further assert that the circuit court improvidently denied their motion for summary disposition of plaintiffs' gross negligence claim. We review de novo this issue. *Spiek, supra* at 337.

We conclude that the documentary evidence does not support a reasonable inference that the participation of Brockman, Levy, and Fratske in the August 7, 2000, seizure amounted to gross negligence. *Jackson, supra* at 146-147, 152. As discussed in part III, ample evidence supports the conclusion that Brockman, Levy, and Fratske had probable cause to conduct a search and seizure at 6800 Greenfield on August 7, 2000. This same evidence supporting the reasonableness of Brockman, Levy, and Fratske's decision to conduct the search and seizure precludes a reasonable juror from concluding that they acted with gross negligence. *Bell v Fox*, 206 Mich App 522, 525-526; 522 NW2d 869 (1994) (observing that the defendants' probable cause to arrest the plaintiff precluded her gross negligence claims and other tort claims against the defendants).

The existence of plaintiffs' corporate filings, invoices, and other documents did not deprive Brockman, Levy, and Fratske of a basis for probable cause to search and seize tobacco products at 6800 Greenfield. The fact that some evidence might have contradicted the decision of Brockman, Levy, and Fratske to conduct the seizure at 6800 Greenfield does not transform their decision into an act of substantial disregard for whether their conduct would cause plaintiffs injury. *Stein, supra* at 125.

The transcript of the three-day hearing of Simons Brothers' motion to quash the search warrant in *Simons Bros Wholesale, Inc, v Michigan Dep't of Treasury*, Marquette Circuit Court, No. 00-37443, which concluded on August 1, 2000, is before us. The circuit judge who presided over the hearing noted that the principal of Simons Brothers admitted doing business in Dearborn and testified that Simons Brothers and Great Lakes had more or less merged. After three days of testimony, where Simons Brothers tested the validity of the warrant, the judge concluded that the jeopardy warrant was justified and that there had been fraud and illegality.[5] Representatives from the Attorney General's office were present at that hearing, and Levy repre-

---

[5] The Marquette Circuit Court judge concluded:

We have heard approximately three days of testimony and argument on this matter. In addition, the parties have submitted briefs.

\* \* \*

Here are my findings and opinion:

First, with respect to the search warrant: On July 18th, 2000, the Department of Treasury, by the Michigan State Police, executed simultaneously a jeopardy assessment Treasury warrant and a search warrant on Simon [sic] Brothers Wholesale, Loren Anderson, and Terry Anderson.

Terry Anderson is an officer of the corporation, and Loren Anderson is its president. Under the search warrant, computers and computer records, and paper records were seized. Pursuant to the Treasury warrant, the business establishment in Ishpeming was seized in its entirety and padlocked. This included the real estate, vehicles on the premises, inventory, furnishings and equipment.

The search warrant was issued in Lower Michigan by a District Judge based on an affidavit. The issue before this Court is whether the District Judge had probable cause to issue the search warrant.

sented the Attorney General's office at that hearing. The Attorney General's office was thus justified in advising the executing defendants in the instant case to

Plaintiff [Simons Brothers] argues in its brief and supportive motions dated 7-27-2000 that none of the paragraphs contained in the search warrant allege facts sufficient to constitute probable cause to find criminal activity on the part of Simon [sic] Brothers Wholesale, Inc.

The Court disagrees with the plaintiff in this regard. The affidavit does allege non-payment of tobacco tax for shipments to Michigan tribes, which were termed as shipments to the Delaware Tribe of Oklahoma. MCL 205.27 makes this a felony if it is done with intent to defraud or to evade the tax.

\* \* \*

. . . I find the District Court did have probable cause to issue the search warrant, and therefore plaintiff's motion to quash the warrant is denied.

Now, turning to the jeopardy assessment, I make the following findings:

First, I find that Terry Anderson was told of the jeopardy assessment and said he understood at the time of the raid. . . .

Secondly, I agree with the government's analysis and contention that I should view jeopardy as it exists at the start of this trial, not as it existed at the time of the raid.

\* \* \*

Next, I find that the Anderson businesses are really being run by Terry Anderson. We have not heard from him, although he has been in the courtroom all three days. All this Court knows about him is that he has a couple of felonies, including crimes of dishonesty, on his record from Wisconsin.

It is appalling to this Court that we have not heard from the Delaware Tribe except for the affidavit. We have not seen any of their records of shipping, any of their sales records, the so-called agreement.

continue with the seizure in Dearborn on August 7, 2000, not with regard to VIP, but regarding Great Lakes Wholesale and Simons Brothers. The evidence shows that Brockman, Levy, and Fratske did not merely authorize the August 7, 2000, seizure without regard for

I find it hard to believe that they exist by the fact that they haven't been produced in this three-day trial, which has been continued a couple of times, and certainly allowed opportunity to present that evidence.

\* \* \*

My next finding is that the scheme to beat the tax by using the Delaware Tribe is exceedingly reckless, it seems to me, in a highly regulated industry like the tobacco industry.

Next, I find there is evidence in this trial of willful tax evasion in connection with the Delaware Tribe sales and shipments by the plaintiff entities to the Michigan tribes.

The elaborate mechanism employed to try to beat the tax has not been adequately explained to this Court. This evidence of fraud constitutes sufficient jeopardy in my mind to trigger a jeopardy assessment by itself.

In addition, however, we have other evidence that supports the jeopardy assessment. We have—We have my finding that the plaintiffs cannot pay this tax bill. And to free up their assets would merely allow their disposal and they would not be available to satisfy the tax bill—perhaps disposal in Wisconsin, where the Anderson interests—I guess Mr. Loren Anderson has a license.

I further find that the Simon [sic] Brothers Wholesalers license has expired . . . The business is not viable any more without a license.

Lastly, because the Anderson entities, the trucking company, the Dearborn operation, the wholesale operation in Ishpeming, and the individuals all seem to operate as one, I decline to order the return of any of the seized items.

And so for the reasons I have stated, I deny all of the relief requested by the plaintiffs.

any of the circumstances of this case, but reviewed the documentary evidence and the testimony during the August 1, 2000, hearing before reasonably concluding that Great Lakes and Simons Brothers had some type of relationship. Even assuming that Brockman, Levy, and Fratske misapprehended the nature or meaning of the corporate filings, invoices, and other documents that plaintiffs presented in support of their August 7 protestations that they, not Simons Brothers, owned the inventory at 6800 Greenfield, defendants' failure to recognize the import of the documentation amounts, at most, to ordinary negligence, which does not create a material question of fact concerning gross negligence. *Maiden, supra* at 122-123.[6]

In Docket No. 239172, we reverse the circuit court's order denying the executing defendants' motion for summary disposition of plaintiffs' gross negligence claim. In Docket No. 247444, we reverse the circuit court's order denying Brockman, Levy, and Fratske's motion for summary disposition of plaintiffs' § 1983 claim and their gross negligence claim.

---

[6] In light of our conclusions in parts III and IV, we need not consider the additional issue raised by Brockman, Levy, and Fratske related to absolute prosecutorial immunity.