*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PHILLIP G. BAZZO,

       Plaintiff-Appellant,

v

ATTORNEY GRIEVANCE COMMISSION,
MICHAEL V. GOETZ, and SARAH C. LINDSEY,

       Defendants-Appellees.

UNPUBLISHED
April 25, 2024

No. 363790
Court of Claims
LC No. 22-000063-MZ

Before: M. J. KELLY, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

In this appeal involving an underlying attorney-discipline matter, plaintiff appeals as of right the order of the Court of Claims denying his motion to amend his first amended complaint and for reconsideration. The Court of Claims had granted defendants' motion for summary disposition according to MCR 2.116(C)(4) (lack of subject-matter jurisdiction), (C)(7) (governmental immunity; prior judgment), and (C)(8) (failure to state a claim), concluding that defendants were entitled to governmental immunity, and that plaintiff's claims were precluded because they were a collateral attack on a previous judgment against him. We affirm.

## I. BACKGROUND

Plaintiff was disbarred in February 2021, after 45 years as a practicing attorney. Defendant's first amended complaint alleged several instances of misconduct by defendants, the Attorney Grievance Commission (AGC), Michael Goetz, its Grievance Administrator, and Sarah Lindsey, its Senior Trial Attorney, stating they "acted unethically beyond their scope of agency in their prosecution of me for alleged misappropriation and other alleged misconduct in violation of 42 U.S.C. Section 1983."

The trial court described the underlying facts as follows:

> In October 2019, defendant Michael Goetz, as Grievance Administrator, filed a two-count formal complaint against plaintiff with the Attorney Discipline Board (ADB). Count One of the formal complaint related to plaintiff's

-1-

representation of [a client]. In 2011, [the client] retained plaintiff to represent her in two lawsuits arising from a sewer backup and flooding in her apartment. Both lawsuits resolved through a settlement. Plaintiff engaged in a sexual relationship with [that client] during the representation. Plaintiff was alleged to have convinced [her] to retroactively approve a loan to plaintiff from her portion of the settlement proceeds. According to the formal complaint, plaintiff withdrew funds from the two settlement checks (which were deposited into his IOLTA account) under the premise that the funds would be used to satisfy the loan. Plaintiff first withdrew $2,000, and later withdrew $2,700, without [the client's] knowledge or consent. In Count Two of the formal complaint, defendants alleged that plaintiff violated a different client's confidences in an e-mail to 16 third parties that revealed the client's medical conditions. The focus of this lawsuit is on plaintiff's representation of [the first client] and the allegations in Count One of the formal complaint.

The trial court recounted the actions of the ADB as follows:

Before the ADB, plaintiff disputed the accuracy of the allegations, and he argued (as he does in this matter) that defendants violated his constitutional rights. Following a hearing, the ADB hearing panel concluded that plaintiff violated the Michigan Rules of Professional Conduct and ordered his disbarment. The ADB affirmed the hearing panel's order of disbarment. Then, the ADB denied plaintiff's motion for reconsideration, and plaintiff appealed to the Michigan Supreme Court.

The Supreme Court denied plaintiff's application for leave to appeal, *Grievance Administrator v Bazzo*, 509 Mich 989 (2022), and denied reconsideration of its decision after plaintiff filed the instant complaint, *Grievance Administrator v Bazzo*, 978 NW2d 831 (2022).

## II. AMENDMENT

Plaintiff argues that the Court of Claims erred by denying his motion to file his proposed second amended complaint. A trial court's decision to deny leave to amend a pleading is reviewed for an abuse of discretion. *Casey v Auto Owners Ins Co*, 273 Mich App 388, 400-401; 729 NW2d 277 (2006). A trial court does not abuse its discretion if the result falls within the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

"[A] party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires." MCR 2.118(A)(2). Motions to amend a complaint should be denied only for particularized reasons, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies in the pleadings, undue prejudice to the opposing party, or futility. *Casey*, 273 Mich App at 401. See also *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52-53; 684 NW2d 320 (2004).

The Court of Claims denied plaintiff's motion to file a second amended complaint because "amendment would be futile because it fails to state an actionable claim and because the claims

constitute a collateral attack on the order of the Attorney Discipline Board as to which he twice sought review in the Supreme Court without success."

Plaintiff argues that the claims that he added to his complaint, Counts V and VI, presented meritorious arguments that the Court of Claims had not previously rejected. According to plaintiff, the proposed Count V asserted that defendants Goetz and Lindsey, before filing a complaint against plaintiff with the ADB, were acting as "complaining witnesses submitting false facts and withholding exculpatory IOLTA evidence" for purposes of obtaining a determination of probable cause by the AGC so that the disciplinary proceeding could proceed. In proposed Count VI, plaintiff requested a declaratory judgment to void the outcome of his attorney-discipline proceedings. The Court of Claims held that defendants were immune from plaintiff's 42 USC 1983 claims against the individual defendants because "the preparation and filing of the complaint was a core prosecutorial function and such actions fall within absolute immunity," plaintiff "did not allege that the individual defendants violated any clearly established constitutional right," and none of the defendants—the AGC as an arm of the state, and the individual defendants in their official capacities—could properly be sued under 42 USC 1983.

## A. *KALINA V FLETCHER*

Plaintiff argues that the individual defendants were not entitled to immunity for their "investigatory acts," citing *Kalina v Fletcher*, 522 US 118, 120-122; 118 S Ct 502; 139 L Ed 2d (1997). In *Kalina*, the plaintiff filed a claim under 42 USC 1983 for damages because a prosecutor had made two representations in a "Certification for Determination of Probable Cause," summarizing, and swearing the truth of, the evidence on which a court relied to effectuate the plaintiff's arrest. The prosecutor also prepared an unsworn information charging respondent with burglary and an unsworn motion for an arrest warrant. *Id*. at 120-121. The Court recited that a prosecutor is entitled to absolute immunity in the performance of his or her traditional duties as an "advocate in judicial proceedings," and qualified immunity when performing such other duties as advising the police, holding a press conference, and performing investigative functions akin to a detective, and stated that the defendant was entitled to absolute immunity in connection with preparing and filing the information, the arrest warrant, and even the certification-of-probable-cause document, except for her personally swearing to the truth of the allegations in the certification. *Id*. at 124-129. The reason for that exception was that the prosecutor was attesting to the veracity of facts in the certification of probable cause, and thus was acting in the role of a complaining witness. *Id*. at 129-131.

According to plaintiff, the individual defendants' actions of submitting factual allegations to the ADB for determination that there was probable cause was akin to attesting that there was probable cause so that the board would hold a probable-cause hearing. Plaintiff further argues that this was equivalent to the individual defendants' acting as complaining witnesses who should not be afforded absolute immunity under *Kalina*. However, the ADB did not simply take the complaint at face value, but rather held hearings to determine the validity of the allegations. The individual defendants compiled information and formed the complaint, and the ADB determined the merits of those allegations. Assuming the roles of a prosecutor and the individual defendants are analogous, as plaintiff presupposes, the actions of the individual defendants were more closely related to the function of the prosecutor as an advocate for the public than to the role of a witness attesting to certain facts. Thus, assuming *Kalina* applies to attorney-disciplinary proceedings, the

factual assertions in the subject complaint did not fall under the exception to absolute immunity recognized in *Kalina*.

## B. IMMUNITY

"Section 1983 is a codification of § 1 of the Civil Rights Act of 1871. The text of the statute purports to create a damages remedy against every state official for the violation of any person's federal constitutional or statutory rights." *Kalina*, 522 US at 123 (citations omitted). A person experiencing " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' because of the actions of another person acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State' may file an action seeking relief against the party that caused the deprivation." *Hojeije v Dep't of Treasury*, 263 Mich App 295, 303; 688 NW2d 512 (2004), quoting 42 USC 1983. To the extent that plaintiff's proposed second amended complaint is against defendants Goetz and Lindsey in their official capacities, defendants are absolutely immune from plaintiff's 42 USC 1983 claims. "Neither states nor state officials acting in an *official* capacity may be sued under 42 USC 1983," because "[t]he Eleventh Amendment bars such suits unless the state has waived its immunity, or unless Congress has exercised its power to override that immunity." *Duckett v Solky*, 341 Mich App 706, 729; 991 NW2d 852 (2022). This absolute immunity from suit extends to departments of the state. *Will v Mich Dep't of State Police*, 491 US 58, 67-71; 109 S Ct 2304; 105 L Ed 2d 45 (1989). The AGC is an entity of the state. See MCR 9.108(A) ("The Attorney Grievance Commission is the prosecution arm of the Supreme Court for discharge of its constitutional responsibility to supervise and discipline Michigan attorneys").

However, "a lawsuit for money damages against a public official in his or her individual capacity is not precluded." *Duckett*, 341 Mich App at 729-730. To the extent that plaintiff's proposed second amended complaint set forth claims against Goetz and Lindsey as individuals, qualified immunity is available. "Qualified immunity is an established federal defense against claims for damages under § 1983 for alleged violations of federal rights," and its applicability in a particular case is generally decided by the trial court. *Morden v Grand Traverse Co*, 275 Mich App 325, 340; 738 NW2d 278 (2007). Government officials performing discretionary functions are generally shielded from liability for civil damages by qualified immunity as long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v McGinnis*, 239 Mich App 636, 644; 609 NW2d 222 (2000) (quotation marks and citations omitted). "In other words, public officials enjoy qualified immunity for mistakes with regard to the legality of their actions." *Morden*, 275 Mich App at 340.

Here, the individual defendants were not violating plaintiff's established statutory or constitutional rights by preparing a complaint against him for adjudication by the AGC and ADB. The gathering of information and compiling of allegations came under the individual defendants' normal responsibilities. Plaintiff's disagreement with their characterizations of his actions as keeping a client's money for himself, which plaintiff maintains was actually a legitimate loan arrangement, and of having an affair with that client lasting several months, which plaintiff maintains lasted only 37 days, were issues decided by the commission on the basis of the evidence presented.

An official's conduct falls within the area protected by a constitutional right only when the right allegedly violated has been established by "binding precedent" that is "directly on point." *Morden*, 275 Mich App at 340-341. See also *Thomas*, 239 Mich App at 645 ("[T]o be clearly established, a question must be decided either by the highest state court in the state where the case arose, by a United States Court of Appeals, or by the Supreme Court.") (quotation marks and citation omitted; alteration in original). Despite this standard, plaintiff has not cited binding precedent for the proposition that a grievance administrator or senior administrative attorney violate constitutional rights by compiling a complaint for official consideration that includes allegations that the subject of the investigation disputes. "Bare allegations of faulty subjective intent should not suffice to subject government officials either to the costs of trial or to the burden of broad-reaching discovery." *Morden*, 275 Mich App at 340.

Plaintiff does argue that the individual defendants' conduct in presenting a complaint against him with ostensibly false information, and failing to provide his IOLTA account information to him until 21 days before his disciplinary hearing, constituted prosecutorial misconduct in violation of his due-process rights.

A claim of malicious prosecution in violation of 42 USC 1983 premised on a violation of the Fourth Amendment requires that the claimant prove the following:

> First, the defendant must have influenced or participated in the decision to prosecute the plaintiff. Second, because this claim is premised on a violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, he or she suffered a deprivation of liberty . . . . Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. [*Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 389-390; 838 NW2d 720 (2013) (quotation marks and citations omitted).]

The allegations of the complaint were addressed in a hearing that was *not* decided in plaintiff's favor. Therefore, plaintiff cannot establish malicious prosecution.

## C. COLLATERAL ATTACK

Finally, we agree with the trial court that plaintiff's claims challenging the propriety of the results of his attorney-discipline process, which were previously litigated to finality, constitute an impermissible collateral attack on the previous litigation.

A collateral attack takes place when a party attacks the result of litigation in a subsequent unrelated proceeding. See *In re Application of Indiana Michigan Power Co to Increase Rates*, 329 Mich App 397, 406; 942 NW2d 639 (2019). "Collateral attacks, as opposed to direct appeals, require consideration of the interests of finality and of administrative consequences." *People v Ingram*, 439 Mich 288, 291; 484 NW2d 241 (1992). "A collateral attack on a previous decision is generally impermissible," and a party should instead challenge an adverse decision in "the appellate process in the context of that same proceeding." *In re Application of Indiana Michigan Power Co*, 329 Mich App at 406. "It is well established in Michigan that, assuming competent jurisdiction, a party cannot use a second proceeding to attack a tribunal's decision in a previous

proceeding." *Workers' Compensation Agency Dir v MacDonald's Indus Prod, Inc (On Reconsideration)*, 305 Mich App 460, 474; 853 NW2d 467 (2014).

Plaintiff's proposed second amended complaint sought compensatory damages and to void his disbarment because of defendants' "fraud" and "deception." Plaintiff thus contested the actions and decision resulting from the attorney-discipline process. According to plaintiff's first amended complaint, he had two cases pending in the Michigan Supreme Court. The first, seeking superintending control on an investigation of the AGC for issues relating to candor and suppression of exculpatory evidence, was dismissed. *In re Request for Investigation Pursuant to MCR 9131(A)*, 509 Mich 991 (2022). In the second, as noted, the Supreme Court denied leave to appeal the ADB's decision to disqualify plaintiff from the practice of law, *Grievance Admin v Bazzo*, 509 Mich 989, and denied reconsideration, *Grievance Admin v Bazzo*, 978 NW2d 831. Even though plaintiff sought investigation of only the AGC in the first case, and named only Goetz in the second, and did not previously name Lindsey as a defendant, both previous suits were challenging the same act of disbarment for the same reasons, and all defendants were a part of the AGC. Thus, with this case, plaintiff is attempting an improper collateral attack on the results of earlier proceedings.[1]

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Christopher M. Murray

---

[1] Apart from the failure to avoid immunity, the Court of Claims appears to have considered the merits of the claims of the proposed second amended complaint when it granted defendants' motion for summary disposition. The trial court correctly concluded that the "amendment would be futile because it fails to state an actionable claim and because the claims constitute a collateral attack on the order of the Attorney Discipline Board as to which he twice sought review in the Supreme Court without success."