MORDEN v GRAND TRAVERSE COUNTY

Docket No. 272505. Submitted March 14, 2007, at Lansing. Decided April 24, 2007, at 9:05 a.m.

Elizabeth Morden, as personal representative of the estate of Christopher R. Morden, deceased, brought an action in the Grand Traverse Circuit Court against Grand Traverse County, Marilyn E. Conlon, M.D., David J. Wilcox, D.O., and others, seeking damages following the death of the decedent who, at the time, was being held in the Grand Traverse County Jail and was receiving medical treatment from Dr. Conlon, a consulting psychiatrist, and Dr. Wilcox, the jail physician. The plaintiff asserted state law claims alleging malpractice by the medical defendants and federal law claims alleging violation of constitutional rights under 42 USC 1983. Following the dismissal of the state law claims, Conlon moved for summary disposition of the federal law claims. The trial court, Philip E. Rodgers, Jr., J., denied the motion on the basis that an issue of fact existed regarding whether Conlon acted with deliberate indifference in treating the decedent to the extent that she was not entitled to qualified immunity. Conlon appealed from the denial of her motion.

The Court of Appeals *held*:

1. Cruel and unusual punishment prohibited by the Eighth Amendment may include the denial of medical or psychological treatment. Medical treatment that is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness violates the Eighth Amendment.

2. The Eighth Amendment does not apply to pretrial detainees, such as the decedent. However, the Fourteenth Amendment affords pretrial detainees a due process right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners. The same standard, deliberate indifference, applies to both detainees and convicts. A failure or refusal to provide medical care, or treatment so cursory as to amount to no treatment at all, may, in the case of serious medical problems, violate the Fourteenth Amendment.

3. Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, which is

proscribed by the Eighth Amendment. The inadvertent failure to provide adequate medical care is not actionable. A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice. A claim of cruel and unusual punishment has both objective and subjective components. The objective component requires a showing that the plaintiff's medical needs were sufficiently serious. The subjective component requires a showing that the defendant was deliberately indifferent to the plaintiff's serious medical needs.

4. Summary disposition of the § 1983 claim should have been granted in favor of Conlon because the allegations and the evidence regarding whether she complied with the appropriate standard of care suggest a malpractice theory and there is no authority in support of the proposition that a § 1983 claim may be brought solely on the basis that a professional has committed malpractice. Moreover, evidence that Conlon may have failed to comply with the requisite standard of care is insufficient to prove cruel and unusual punishment because the constitutional claim cannot be based on negligence.

5. The plaintiff's theory of causation was insufficient as a matter of law to establish the requisite proximate cause for a § 1983 claim.

6. The plaintiff failed to demonstrate that Conlon acted with a sufficiently culpable state of mind. No genuine issue of material fact existed with regard to the subjective component of the claim of cruel and unusual punishment.

7. Even if there were a genuine issue of material fact concerning the plaintiff's claim of a constitutional violation, Conlon would still be entitled to qualified immunity. Even if Conlon's actions constituted a violation of the decedent's right to be free from cruel and unusual punishment, the plaintiff failed to show that at the time of such action it was clearly established that such actions constitute deliberate indifference.

Reversed and remanded for the entry of order of summary disposition for Conlon.

1. CONSTITUTIONAL LAW — PRISONS AND PRISONERS — SERIOUS MEDICAL NEEDS — DELIBERATE INDIFFERENCE.

Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain that is proscribed by the Eighth Amendment; the inadvertent failure to

provide medical care or negligence in diagnosing or treating a
medical condition is not deliberate indifference; deliberate indif-
ference is the reckless disregard of a substantial risk of serious
harm; mere negligence, or even gross negligence, will not suffice.

2. CONSTITUTIONAL LAW — PRISONS AND PRISONERS — CRUEL AND UNUSUAL
   PUNISHMENT.

  A claim alleging cruel and unusual punishment in violation of the
  Eighth Amendment as a result of deliberate indifference to the
  serious medical needs of a prisoner has both objective and subjec-
  tive components; the objective component requires a showing that
  the plaintiff's medical needs were sufficiently serious and the
  subjective component requires a showing that the defendant was
  deliberately indifferent to the plaintiff's serious medical needs.

*Sachs Waldman, Professional Corporation* (by *Linda
Turek*), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Mary Massaron Ross*), for
Marilyn E. Conlon, M.D.

Before: SMOLENSKI, P.J., and SAAD and WILDER, JJ.

PER CURIAM. This case arises out of the death of
Christopher R. Morden (the decedent). Plaintiff Eliza-
beth Morden, as personal representative of the estate of
her son, the decedent, has sued defendants Marilyn E.
Conlon, M.D., and David J. Wilcox, D.O., among others,
asserting state law malpractice claims and federal con-
stitutional claims under 42 USC 1983. After the state
law claims were dismissed, Conlon moved for summary
disposition of the federal claims under MCR 2.116(C)(8)
and (10), which the trial court denied, finding an issue
of fact regarding whether Conlon acted with deliberate
indifference in treating the decedent and therefore was
not entitled to qualified immunity. Because we hold
that (1) no genuine issue of material fact exists regard-
ing plaintiff's claim of deliberate indifference, and
(2) Conlon would be entitled to qualified immunity

even if an issue of fact did exist, we reverse and remand for the entry of summary disposition in Conlon's favor.

I

The essential facts are largely undisputed. After being arrested on February 4, 2002, the decedent claimed that he was hearing voices and expressed thoughts of self-harm. A suicide alert was issued. The decedent was already taking prescribed medications. Wilcox, the jail physician, continued the decedent's psychotropic medications of 1 mg Risperdal[1] three times daily and 40 mg Celexa[2] daily, the doses prescribed in December 2001.

On or around February 10, 2002, the decedent was hearing voices and wanted to hurt someone in his cell. Conlon (a consulting psychiatrist) and Wilcox visited the decedent on February 12, 2002. Conlon recommended that Wilcox increase the decedent's Risperdal dose. Conlon asserts that Wilcox was free to implement or reject that recommendation. The decedent's Risperdal dose was increased according to Conlon's recommendation.

On February 27, 2002, a sheriff's deputy found the decedent unresponsive in his cell. He was rocking back and forth in a fetal position. His speech was slow. On March 5, 2002, the decedent was again put on suicide watch after reporting that voices were telling him to stab himself with his pencil. When Conlon visited the

---

[1] Risperdal is an antipsychotic medication. It is categorized as an "atypical" antipsychotic (like Clozaril, Zyprexa or Seroquel). Its method of action is that of a serotonin and dopamine receptor antagonist (SDA). *Tarascon Pocket Pharmacopoeia 2000*, p 70.

[2] Celexa is an antidepressant medication. It is a selective serotonin reuptake inhibitor (SSRI). The maximum recommended daily dose is 40 mg. *Tarascon Pocket Pharmacopoeia 2000*, p 68.

decedent on March 12, 2002, although she noted some improvement, she recommended an increase of Risperdal.

Plaintiff visited the decedent on March 15, 2002, and found him acting "druggy." Plaintiff told a social worker at the jail that she was worried about her son. On March 18, 2002, the social worker reported that the decedent got dizzy and that his vision blacked out when he stood up. Wilcox noted that on March 19, 2002, the decedent suffered from head rushes, and that the side effects had started the last time his Risperdal dosage was increased. Wilcox took the decedent's blood pressure.[3] Wilcox recommended a psychiatric consultation.

On March 23, 2002, Conlon visited the decedent and noted the decedent's complaints of tingling, head rush when he stood up, and being unable to stand without holding onto a wall. Conlon stated that improvement with Risperdal was apparent, but that the drug was likely causing orthostatic hypotension,[4] so she suggested switching to a different neuroleptic, according to the following schedule:

• Seroquel (another antipsychotic medication) 100 mg at bedtime for two days, then 200 mg at bedtime for two days, then 300 mg for four days, then 400 mg at bedtime;

• Decrease Risperdal by 2 mg with each increase of Seroquel; and

• Continue Celexa dosage unchanged.

---

[3] Plaintiff posits that Wilcox apparently thought he was ruling out postural or orthostatic hypotension (a condition in which the blood pressure abnormally decreases when moving from a sitting to a standing position), which plaintiff asserts is a sign of neuromalignant syndrome (NMS).

[4] Orthostatic hypotension, or postural hypotension, occurs when a patient stands after sitting or lying down. Falling blood pressure may cause the patient to faint. *The Signet Mosby Medical Encyclopedia* (Revised Edition, 1996), p 407.

On March 26, 2002, Wilcox noted that the decedent had lost more weight, spoke in a low voice with few words, walked stiffly without head or arm movement, and was "statue-like."

On April 1, 2002, the decedent began clenching his fists and exhibiting seizure-like activity. He was held up by another inmate in order to prevent him from falling to the floor. The decedent was eventually lowered to the floor while the other inmates called for assistance. Cardiopulmonary resuscitation was initiated at the scene. The decedent was defibrillated within 90 seconds of the witnessed cardiac arrest but did not respond. Paramedics took the decedent to a hospital emergency department, where he arrived without any heart activity and was pronounced dead.

An autopsy found no determinable cause of death. Dr. Bader Cassin, Washtenaw County Chief Medical Examiner, testified that in his opinion the decedent "probably" died of a cardiac arrhythmia caused by medications. Dr. Cassin testified that he did not believe that the decedent had neuroleptic malignant syndrome (NMS) when he died. Plaintiff's expert, Dr. Joel Silberberg, opined that the decedent suffered from NMS when he died. Dr. Silberberg stated that the basis for his opinion was that the decedent was suffering from symptoms of EPS (extrapyramidal syndrome) and autonomic instability.

According to the testimony in the record, EPS consists of symptoms resembling Parkinson's tremors that are side effects of psychotropic medications. NMS, on the other hand, is a fatal disease and a medical emergency. It is a rare reactive condition to psychotropic medications that can occur after just the first dose, or after several months of treatment. NMS occurs mostly in males, and involves lead-pipe rigidity, high fever,

dehydration, sweating, *elevated* blood pressure, fast heart rate and respiration, agitation, elevated white blood cell count, difficulty swallowing, and autonomic instability. According to plaintiff, muscle wasting and elevated myoglobin are also signs. The decedent had a myoglobin level of 562, which plaintiff asserts is very high. Wilcox testified that the decedent was exhibiting lead-pipe rigidity.

II

We review the trial court's grant or denial of summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim on the basis of the pleadings alone to determine whether the plaintiff has stated a claim upon which relief can be granted. We are required to accept all of plaintiff's well-pleaded factual allegations as true and construe those allegations in a light most favorable to the nonmoving party. *Johnson v Detroit*, 457 Mich 695, 701; 579 NW2d 895 (1998). Only if no factual development could justify the plaintiff's claim for relief can the motion be granted. *Koenig v South Haven*, 460 Mich 667, 674; 597 NW2d 99 (1999).

When considering a motion for summary disposition under MCR 2.116(C)(10), a trial court must consider affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties in the light most favorable to the party opposing the motion. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). Such materials are considered only to the extent that they are admissible in evidence. MCR 2.116(G)(6). Our "task is to review the evidence and all reasonable inferences from it and determine whether a genuine issue of any material fact

exists to warrant a trial." *Muskegon Area Rental Ass'n v City of Muskegon*, 244 Mich App 45, 50; 624 NW2d 496 (2000), rev'd in part on other grounds 465 Mich 456 (2001). " 'Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.' " *Taylor v Laban*, 241 Mich App 449, 452; 616 NW2d 229 (2000) (citation omitted).

III

A

Any person who, under color of state law, deprives another of rights protected by the constitution or laws of the United States, is liable under 42 USC 1983. *Monell v Dep't of Social Services of the City of New York*, 436 US 658, 690-691; 98 S Ct 2018; 56 L Ed 2d 611 (1978). "[T]o survive summary [disposition] in a 1983 action, [the plaintiff] must demonstrate a genuine issue of material fact as to the following 'two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law.' " *Johnson v Karnes*, 398 F3d 868, 873 (CA 6, 2005) (citation omitted).

The Eighth Amendment of the United States Constitution provides: "Excessive bail shall not be required . . . nor cruel and unusual punishments inflicted." "Cruel and unusual punishment prohibited by the Eighth Amendment may include the denial of medical or psychological treatment." *Mosqueda v Macomb Co Youth Home*, 132 Mich App 462, 471; 349 NW2d 185 (1984). "Medical treatment that is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness

violates the eighth amendment." *Rogers v Evans*, 792 F2d 1052, 1058 (CA 11, 1986).

The Eighth Amendment does not apply to pretrial detainees, such as the decedent. However, detainees are entitled under the Fourteenth Amendment's substantive Due Process Clause to the same care as prison inmates. *Graham v Washtenaw Co*, 358 F3d 377, 383 (CA 6, 2004) (the Fourteenth Amendment "affords pretrial detainees a due process right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners"). The same standard, deliberate indifference, applies to both detainees and convicts. See *id.*; *Watkins v Battle Creek*, 273 F3d 682, 686 (CA 6, 2001). A "failure or refusal to provide medical care, or treatment so cursory as to amount to no treatment at all, may, in the case of serious medical problems, violate the Fourteenth Amendment." *Tolbert v Eyman*, 434 F2d 625, 626 (CA 9, 1970).

In *Estelle v Gamble*, 429 US 97, 98-101; 97 S Ct 285; 50 L Ed 2d 251 (1976), the United States Supreme Court, in determining whether a cause of action existed under § 1983, analyzed Eighth Amendment prohibitions against cruel and unusual punishments. *Id.* at 102-103. The Court concluded that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *Id.* at 104 (internal quotation marks and citation omitted). The Court recognized, however, that a violation does not occur every time a prisoner receives inadequate medical treatment. *Id.* It held that "an inadvertent failure to provide adequate medical care" is not actionable and that a *"complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth*

*Amendment.*" *Id.* at 105-106 (emphasis added). Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

It is a high standard. "Deliberate indifference" is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice. *Farmer v Brennan,* 511 US 825, 835-836; 114 S Ct 1970; 128 L Ed 2d 811 (1994); *Williams v Mehra,* 186 F3d 685, 691 (CA 6, 1999) (en banc).

A claim of cruel and unusual punishment has both objective and subjective components. The objective component requires a showing that the plaintiff's medical needs were sufficiently serious. *Hunt v Reynolds,* 974 F2d 734, 735 (CA 6, 1992). The subjective component requires a showing that the defendants were deliberately indifferent to the plaintiff's serious medical needs. See *id.* In other words, the deliberate indifference standard contains both an objective component (Was the deprivation sufficiently serious?) and a subjective component (Did the officials act with a sufficiently culpable state of mind?). *Wilson v Seiter,* 501 US 294, 298; 111 S Ct 2321; 115 L Ed 2d 271 (1991).

In the instant case, plaintiff's complaint alleges negligence or, alternatively, gross negligence by Conlon. In addition, plaintiff relies on expert testimony to support the theory that Conlon may not have complied with the standard of care applicable to a psychiatrist. The allegations and the evidence regarding whether Conlon complied with a standard of care unmistakably suggest a malpractice theory, but we find no authority that a § 1983 claim may be brought solely on the basis that a professional has committed malpractice. *Farmer, supra* at 835-836; *Williams, supra* at 691. Moreover, evidence

that Conlon may have failed to comply with the requisite standard of care is insufficient to prove cruel and unusual punishment because the constitutional claim cannot be based on negligence. *Estelle, supra* at 105-106. Accordingly, summary disposition should have been granted pursuant to MCR 2.116(C)(8) and (10).

Plaintiff's theory of causation is also insufficient as a matter of law to establish the requisite proximate cause for a § 1983 claim. Plaintiff suggests that Conlon's treatment caused NMS, and that NMS caused the decedent's death. However, Conlon testified that she did not believe the decedent had NMS and that she did not treat him for it. In addition, the medical examiner who performed the autopsy and plaintiff's expert pathologist opined that the decedent did not die from NMS. While plaintiff's psychiatrist-expert concluded that the decedent died from NMS, this testimony amounts to speculation and conjecture, because it does not exclude other possibilities to a reasonable degree of certainty.[5] See *Robins v Garg*, 270 Mich App 519, 527; 716 NW2d 318 (2006); *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 496; 668 NW2d 402 (2003); see also *Horn v Madison Co Fiscal Court*, 22 F3d 653, 659 (CA 6, 1994) ("[P]roximate causation is an essential element of a § 1983 claim for damages."). Therefore, the evidence is insufficient to raise a genuine issue of fact. *Self v Crum*, 439 F3d 1227 (CA 10, 2006) (physician who provided medication for respiratory infection and to reduce fever and coughing did not consciously disregard the substantial risk of serious harm arising from the prisoner's symptoms, and the prisoner's allegation that

---

[5] While plaintiff posits that the decedent died from NMS, the medical examiner opined that the decedent died from cardiac arrhythmia, and not from NMS. Plaintiff's evidence simply does not exclude other reasonable possibilities regarding causation to a reasonable degree of certainty. See *Robins, supra* at 527; *Wiley, supra* at 496; *Horn, supra* at 659.

the physician diagnosed his heart problem but ignored it was based on speculation and conjecture).

Plaintiff also failed to demonstrate that defendant Conlon acted "with a sufficiently culpable state of mind." *Wilson, supra* at 298. "[M]ere negligence does not amount to deliberate indifference." *Jackson v Detroit,* 449 Mich 420, 430; 537 NW2d 151 (1995). Deliberate indifference requires that the "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer, supra* at 837. A claim of deliberate indifference necessarily " 'implies that [the] defendant[] knew or should have known that [he or she was] doing something "wrong" or "unconstitutional." ' " *Dampier v Wayne Co,* 233 Mich App 714, 739; 592 NW2d 809 (1999) (citation omitted).

Conlon cites *Horn* for the proposition that the conduct for which liability attaches must demonstrate deliberateness tantamount to an intent to punish. *Horn* involved a juvenile detainee who, like the decedent, had been suicidal. The plaintiff in *Horn,* through his limited conservator, sought damages following his attempted suicide. The *Horn* court stated:

> Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain. However, the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. [*Horn, supra* at 660 (citations omitted).]

The *Horn* court cited *Bowen v City of Manchester*, 966 F2d 13, 17 (CA 1, 1992), for the proposition that "evidence must show the official had actual knowledge of, or was willfully blind to, the serious risk of suicide," and quoted *Colburn v Upper Darby Twp*, 946 F2d 1017, 1024-1025 (CA 3, 1991), for its holding that the circumstances of the treatment "must be such that the official knew or should have known of the 'particular vulnerability to suicide' or the 'strong likelihood' that self-inflicted harm would occur." The *Horn* court observed that the record did "not contain evidence that defendants knew of the frequency of juvenile detainee suicides and deliberately chose not to employ reasonable preventative measures." *Horn, supra* at 661.

We believe that *Horn* is relevant because its facts include an outcome that Conlon was here attempting to avoid: an attempt at suicide by the decedent. Conlon recommended an increased dose of Risperdal (and later recommended a tapering off of Risperdal with the gradual addition of Seroquel) in order to help diminish the decedent's symptoms of psychosis, and to diminish the risk of suicide, because the decedent was on suicide watch.

*Horn* is supported by *Farmer, supra* at 835, which held that deliberate indifference requires a degree of culpability greater than mere negligence, but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." A plaintiff

> need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circum-

stantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. [*Id.* at 842.]

Similarly, in *Miller v Calhoun Co*, 408 F3d 803, 820 (CA 6, 2005), the court held that the trial court did not err in granting summary judgment for the defendant. The *Miller* court noted:

Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment. [*Id.* at 813 (internal quotation marks and citations omitted).]

The *Miller* court cited the same phrase in *Horn* on which Conlon now relies, namely, "deliberateness tantamount to intent to punish," but *Miller* also stated that deliberate indifference is *"less than* acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* (internal quotation marks and citation omitted; emphasis added).

Thus, the standard is more than simple negligence, and it approaches, but does not reach, an intent to punish. *"[W]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation."* *Karnes, supra* at 875 (internal quotation marks and citation omitted; emphasis added). "However, it is not necessary

for a plaintiff to show that the official acted for the very purpose of causing harm or with knowledge that harm will result." *Id.* (internal quotation marks and citation omitted). "[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* (internal quotation marks and citations omitted).

Here, no genuine issue of material fact with regard to deliberate indifference exists. Conlon was attempting to treat the decedent's symptoms of mental illness by increasing his Risperdal dose. At the time Conlon increased the Risperdal dose, the decedent had recently been put on suicide watch, was experiencing symptoms of psychosis (hearing voices), and wanted to hurt someone in his cell. Such symptoms suggested that the current dose was insufficiently effective. Suicidal ideation, the hearing of voices, and wanting to hurt someone are serious symptoms requiring aggressive treatment. Plaintiff's expert, Dr. Joel Silberberg, testified that an increase in medication such as the one in this case is within the standard of care. Conduct that was arguably within the standard of care (not malpractice) cannot simultaneously rise to the level of deliberate indifference. *Farmer, supra* at 835-836; *Williams, supra* at 691.

The *Farmer* court acknowledged that

> the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment. [*Farmer, supra* at 837-838.]

Here, even assuming that the decedent did suffer from NMS (which is speculative), no evidence indicates that Conlon drew the inference that the decedent suffered

from NMS. Therefore, there is no genuine issue of material fact regarding the subjective component of the claim of cruel and unusual punishment. *Farmer, supra* at 838.

B

Even if there were a genuine issue of material fact concerning plaintiff's claim of a constitutional violation, Conlon would still be entitled to qualified immunity. Whether a defendant is entitled to qualified immunity is a question of law that we review de novo. *Thomas v McGinnis,* 239 Mich App 636, 644; 609 NW2d 222 (2000).

Qualified immunity is an established federal defense against claims for damages under § 1983 for alleged violations of federal rights. *Harlow v Fitzgerald,* 457 US 800; 102 S Ct 2727; 73 L Ed 2d 396 (1982). Qualified immunity is a question of law for the court. *Spurlock v Satterfield,* 167 F3d 995, 1000 (CA 6, 1999). The doctrine applies an objective standard to the conduct of defendants, not to their state of mind. *Harlow, supra* at 816. Bare allegations of faulty subjective intent should not suffice to subject government officials either to the costs of trial or to the burden of broad-reaching discovery. "We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. In other words, public officials enjoy qualified immunity for mistakes with regard to the legality of their actions. *Saucier v Katz,* 533 US 194; 121 S Ct 2151; 150 L Ed 2d 272 (2001).

It is a high standard. "A right is clearly established if there is binding precedent . . . that is directly on point."

*Risbridger v Connelly,* 275 F3d 565, 569 (CA 6, 2002). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brosseau v Haugen,* 543 US 194, 198; 125 S Ct 596; 160 L Ed 2d 583 (2004) (internal quotation marks and citations omitted). *Hunter v Bryant,* 502 US 224, 227; 112 S Ct 534; 116 L Ed 2d 589 (1991), stated: "First, . . . [i]mmunity ordinarily should be decided by the court [and not the jury] long before trial. Second, the court should ask whether the agent acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed . . . after the fact." (Citations omitted.)

The United States Supreme Court has aggressively enforced qualified immunity. In *Saucier,* the Court reaffirmed the strong protection provided, and reversed a court of appeals decision in which qualified immunity was denied because of concerns about the merits of the underlying claim. The Court stressed that qualified immunity is immunity from suit and not merely from liability, and that the determination should be made as early in the proceedings as possible. *Saucier, supra* at 200. *Saucier* outlined two components: First: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier, supra* at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* Second: "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Id.*

*Saucier* stressed that qualified immunity ought not be denied merely because of a genuine issue of fact on the merits of the underlying claim. *Id.* at 202-204. The issue of qualified immunity is distinct from the merits of a claim; indeed, liability on a constitutional claim does not preclude qualified immunity. *Wilson v Layne,* 526 US 603; 119 S Ct 1692; 143 L Ed 2d 818 (1999) (media "ride-along," where the police brought the media into a home to observe the execution of an arrest warrant, violated Fourth Amendment rights of the homeowners, but this was not clearly established at the time, so qualified immunity applied to damages claim).

In *Brosseau,* the Court held that a police officer who used deadly force against a suspect fleeing in a motor vehicle was entitled to qualified immunity from a § 1983 damages claim. The Court reversed the court of appeals, which had denied a motion for summary judgment. *Brosseau, supra* at 195.

In *Brosseau,* the Court reaffirmed the key distinction between the validity of the underlying claim and the qualified immunity defense: "We express no view as to the correctness of the Court of Appeals' decision on the constitutional question itself. We believe that, *however that question is decided,* the Court of Appeals was wrong on the issue of qualified immunity." *Id.* at 198 (emphasis added). "Qualified immunity shields an officer from suit when she makes a decision that, *even if constitutionally deficient,* reasonably misapprehends the law governing the circumstances she confronted." *Id.* (emphasis added).

Accordingly, even if there were a genuine issue of material fact regarding the underlying claim, the next step is to ask whether the right allegedly violated was clearly established. *Saucier, supra* at 201. "This inquiry,

it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Id.*

Even if Conlon's actions, in increasing the decedent's Risperdal dose (in response to a potential suicide and to symptoms of psychosis) and in weaning decedent off of Risperdal while slowly adding Seroquel, constituted a violation of the decedent's right to be free from cruel and unusual punishment, plaintiff fails to show that such right was clearly established at the time of Conlon's actions. Because there was no court precedent predating Conlon's actions that clearly established that such actions by a psychiatrist constitute deliberate indifference, we find that Conlon was cloaked with qualified immunity for her treatment of the decedent.

IV

Plaintiff's claim is based on a theory of malpractice. As such, it fails to raise a genuine issue of material fact regarding a constitutional claim of cruel and unusual punishment. Plaintiff's claim is also based on speculation and conjecture regarding causation, thus failing to create a genuine issue of material fact regarding proximate causation, an essential element of a § 1983 claim. Finally, even if a genuine issue of material fact existed regarding the constitutional claim, Conlon is entitled to qualified immunity, because she did not violate a clearly established constitutional right of which a reasonable governmental actor in her position would have known.

Reversed and remanded for entry of summary disposition in Conlon's favor. We do not retain jurisdiction.