# STATE OF MICHIGAN

# COURT OF APPEALS

STARMANIA HITSON, Individually and as Next
Friend of OTIS CLARK, and DANAS
STURDIVANT,

        Plaintiffs-Appellants,

and

DAWUAN SIMMONS,

        Plaintiff,

v

CITY OF EASTPOINTE, EASTPOINTE POLICE
DEPARTMENT, OFFICER JOHN ARTHURS,
and TODD MURDOCK,

        Defendants-Appellees.

UNPUBLISHED
June 12, 2018

No.  335762
Macomb Circuit Court
LC No.  2015-001176-NZ

Before:  SAWYER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Plaintiff Starmania Hitson, individually and as next friend of Otis Clark, and plaintiff Danas Sturdivant, appeal as of right an order granting summary disposition in favor of defendants, the city of Eastpointe, the Eastpointe Police Department, and Police Officers John Arthurs and Todd Murdock, under MCR 2.116(C)(7), (8), and (10).[1]  We affirm.

This police misconduct action arises out of a confrontation between plaintiffs and the police officers who were dispatched to plaintiffs' neighborhood to investigate a report that two men, plaintiffs' neighbors, were fighting in the street.  Hitson was living at "23752 Brittany," a duplex, with her adult or nearly adult-aged children:  Dawuan Simmons, Shaquirea Simmons,

---

[1] All claims on behalf of plaintiff Dawuan Simmons (Dawuan), were dismissed for failure to appear at his deposition and failure to comply with other discovery requests.  He is not a party to this appeal.

and Danas Sturdivant. Also living in the home was Hitson's one-year-old ward, Otis Clark. On the day at issue, Hitson and the children were in the home; also present were Hitson's nephews, Jameal Hitson and Sinom Page. The parties agree that city of Eastpointe police officers, John Arthurs and Todd Murdock, were dispatched to investigate a complaint of a disturbance at "23756 Brittany."

It is also undisputed that after the officers arrived at the scene, at Hitson's urging, Jameal and Dawuan left her duplex to investigate the officers' arrival. Hitson was concerned because the officers were questioning Hitson's nephew, Sinom. Hitson had not realized that Sinom had left her house to catch a bus to his own home. When Jameal and Dawuan disregarded an instruction to walk in a different direction, the officers stopped them and requested that they produce identification. Dawuan refused this request and, instead, broke into a run back to his house. The officers gave chase. When the officers reached the front porch of the Hitson home, Hitson physically refused to allow the officers into the house. Hitson testified at her deposition that while she was trying to pull the door shut, one of the officers was pulling on her arm in an effort to keep the door open. At one point, Hitson left her position at the front door, and her daughter, Shaqueria, continued in the effort to keep the officers from entering. Eventually, the officers entered the doorway to the home. Shortly thereafter, Officer Murdock deployed his Taser and struck then 17-year-old Sturdivant. Plaintiffs claim that in the officers' haste to enter the home, they also knocked over one-year-old, Clark, causing the child to sustain a concussion and bruising. After the officers gained entry into the home, Dawuan and Sturdivant were arrested for hindering and obstructing an investigation; Hitson was issued a citation for disturbing the peace.

Plaintiffs filed this action against the city of Eastpointe, the Eastpointe Police Department, and Officers Arthurs and Murdock. Plaintiffs assert several state and federal claims, including claims for excessive force, assault and battery, unreasonable seizure, false arrest or false imprisonment, malicious prosecution, ethnic intimidation, gross negligence, and municipal liability. Defendants filed a motion for summary disposition under MCR 2.116(7), (8), and (10). The trial court granted defendants' motion and dismissed plaintiffs' complaint in its entirety. This appeal followed.

## I. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159; 645 NW2d 643 (2002). The trial court granted defendants' motion under MCR 2.116(C)(7), (8), and (10). A defendant is entitled to summary disposition under MCR 2.116(C)(7) if the plaintiff's claims are barred because of immunity granted by law. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). The moving party may support its motion with affidavits, depositions, admissions, or other documentary evidence that would be admissible at trial. *Id.* A reviewing court must accept the content of the plaintiff's complaint as true, unless contradicted by the documentary evidence. *Id.*

A motion under MCR 2.116(C)(8) tests the legal sufficiency of a plaintiff's claim based solely on the pleadings. All well-pleaded factual allegations are accepted as true and construed in the light most favorable to the nonmovant. MCR 2.116(C)(8).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of a plaintiff's claim. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). In reviewing a motion under MCR 2.116(C)(10), the court must consider "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). If reasonable minds could differ on an issue, a genuine issue of material exists. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## II. ANALYSIS

### A. EXCESSIVE FORCE

Plaintiffs argued below that the defendant police officers used excessive force when they pulled on Hitson's arm while trying to gain access to her house, when they allegedly knocked over Clark, and when they tased Sturdivant. The trial court concluded that defendants' conduct was reasonable under the totality of the circumstances and that excessive force was not used. The court alternatively found that the evidence established that Officers Murdock and Arthurs were entitled to qualified immunity. On appeal, plaintiffs only challenge the trial court's determination that the tasing of Sturdivant did not constitute excessive force. Plaintiffs do not address the trial court's dismissal of Hitson's and Clark's excessive force claims. The failure to brief the merits of an allegation of error is deemed abandonment of the issue on appeal. *McIntosh v McIntosh*, 282 Mich App 471, 484; 768 NW2d 325 (2009). Therefore, we will not disturb the trial court's order granting summary disposition of the excessive force claims brought on behalf of Hitson and Clark. With respect to Sturdivant's claim, we conclude that the trial court did not err when it granted summary disposition of this claim.

Sturdivant brings his claim pursuant to 42 USC 1983, alleging that the officers violated his constitutional right to be free from excessive force when Murdock tased him. "Any person who, under color of state law, deprives another of rights protected by the constitution or laws of the United States is liable under 42 USC 1983." *Morden v Grand Traverse Co*, 275 Mich App 325, 332; 738 NW2d 278 (2007). "Section 1983 itself is not the source of substantive rights; it merely provides a remedy for the violation of rights guaranteed by the federal constitution or federal statutes." *York v Detroit*, 438 Mich 744, 757-758; 475 NW2d 346 (1991). The Fourth Amendment of the United States Constitution protects a person from being subject to excessive physical force by law enforcement officers. *Latits v Phillips*, 878 F3d 541, 547 (CA 6, 2017). "[T]o survive summary [disposition] in a 1983 action, [the plaintiff] must demonstrate a genuine issue of material fact as to the following 'two elements: 1) the deprivation of a right secured by the Constitution or law of the United States and 2) the deprivation was caused by a person acting under color of state law.' " *Morden*, 275 Mich App at 332 (citation omitted).

"Within reasonable limits, officers enjoy the discretion to determine the amount of force required by the circumstances and they are not guilty of wrong unless they arbitrarily abuse the power confided in them." *Alexander v Riccinto*, 192 Mich App 65, 69; 481 NW2d 6 (1991). Excessive force claims are analyzed under an "objective reasonableness" standard. *Graham v Connor*, 490 US 386, 388; 109 S Ct 1865; 104 L Ed 2d 443 (1989). "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers'

actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The conduct must be reviewed under the totality of the circumstances confronting the officers. *Dunigan v Noble*, 390 F3d 486, 493 (CA 6, 2004). Recognizing that the test of reasonableness under the Fourth Amendment is not capable of precise definition, the Supreme Court offered guidance in *Graham*, noting that its application "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 US at 396. Further, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-397.

In support of their motion for summary disposition, defendants presented uncontroverted evidence that Officers Murdock and Arthurs were dispatched to a home on Brittany in the city of Eastpointe to investigate two men fighting. When they arrived at the scene, they began their investigation by stopping and speaking to two men in front of the residence to which they were dispatched. During these early moments, the officers were distracted by Hitson's screaming from her porch and the intrusion of Jameal and Dawuan who had left the house at Hitson's urging to investigate the police presence. These men disregarded the officer's directive to stay out of the street and not approach Murdock, who was, at the time, speaking with Sinom. Under these circumstances, the officers' investigation necessarily broadened to include Jameal's and Dawuan's potential involvement in the report of two men fighting. Then, Dawuan's flight when he was asked to present identification, under the circumstances, justified the officers' pursuit of Dawuan to the front door of the home. When they reached the porch, the officers were thwarted in their investigatory efforts by Hitson and then later, by her daughter, Shaqueria. That the circumstances had become quite chaotic at that point is borne out by a review of the video from the officers' patrol cars. Multiple voices can be heard screaming and yelling.

Sturdivant's own testimony confirmed that the situation at the front door was tense. Sturdivant heard his brother, Dawuan, come back into the house. Sturdivant left his bedroom and entered the living room. When Dawuan returned to the house, he was out of breath, he was visibly angry, and his voice was loud. Sturdivant heard Dawuan say that the police officers could not come into the home. He noticed his sister, Shaquirea, at the front door, which was opened just a crack, trying to keep the door shut. Sturdivant also noticed three police officers at the front door. He could hear his sister and the officers "having words" as she tried to push the front door closed. Sturdivant admitted that he could not hear too much, because everybody was yelling. Sturdivant noticed that the police officer's foot was in the door and the officer was trying to push the door open. Defendants presented evidence through their affidavits that Sturdivant ran toward the front door and attempted to force it closed. It was at this point that Officer Murdock deployed his Taser. Sturdivant testified that Murdock said, "Don't move," when he shot the Taser. It is undisputed that only one of the Taser's probes hit Sturdivant. Moreover, Sturdivant admitted that while he sat down after being tased, the force of the Taser did not knock him down. Sturdivant testified that he was burned by the probe and sought medical attention the next day, but no medical records were ever produced despite being requested by defendants. Sturdivant also acknowledged that photographs existed at one time, but were no longer available because his phone was damaged.

-4-

Applying an objective standard, and even accepting as true Sturdivant's denial that he ran toward the door to assist in shutting it, there is no question of material fact that under the totality of the circumstances, Murdock's actions were reasonable. At the time he deployed the Taser, it was reasonable for the officers to be concerned for their safety and to take actions to subdue a perceived threat to that safety. As indicated, the officer's actions are to be judged from the perspective of a reasonable officer on the scene, rather than with the clarity of 20/20 hindsight. See *Graham*, 490 US at 396. The evidence indicated that Murdock used an objectively reasonable amount of force in response to the perceived threat that Sturdivant presented. And there was no evidence that would allow reasonable jurors to conclude that Murdock's actions were objectively unreasonable. Consequently, the trial court properly dismissed this claim under MCR 2.116(C)(10).

Furthermore, the submitted evidence demonstrates that the officers were entitled to qualified immunity. Whether a defendant is entitled to qualified immunity is a question of law that this Court reviews de novo. *Thomas v McGinnis*, 239 Mich App 636, 444; 609 NW2d 222 (2000). Qualified immunity is a recognized defense against claims for damages under § 1983 for alleged violations of federal rights. *Morden*, 275 Mich App at 340. The doctrine of qualified immunity "applies an objective standard to the conduct of defendants, not to their state of mind." *Id.* "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violated the law." *Messerschmidt v Millender*, 565 US 535, 546; 132 S Ct 1235; 182 L Ed 2d 47 (2012) (citation and quotation marks omitted).

Determining whether a law enforcement officer is entitled to qualified immunity on an excessive force claim requires considering: (1) whether the officer violated the plaintiff's constitutional right under the Fourth Amendment; and (2) whether that constitutional right was clearly established at the time of the incident. *Kent v Oakland Co*, 810 F3d 384, 390 (CA 6 2016). Qualified immunity applies unless the official's conduct was in violation of a clearly established constitutional right. *Lavigne v Forshee*, 307 Mich App 530, 542; 861 NW2d 635 (2014).

In *Saucier v Katz*, 533 US 194, 201; 121 S Ct 2151; 150 L Ed 2d 272 (2001), overruled in part on other grounds in *Pearson v Callahan*, 555 US 223, 236; 129 S Ct 808; 172 L Ed 2d 565 (2009), the United States Supreme Court explained the initial inquiry for resolving whether a defendant is protected by qualified immunity: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" If there has been no violation of a constitutional right, no further inquiry is required. *Id.* Alternatively, if a violation could be made out, then the next question must be considered: "whether the right was clearly established." *Id.*

In light of our analysis regarding the reasonableness of Murdock's actions, we conclude that the officers would also be entitled to qualified immunity because Sturdivant's constitutional rights were not violated. That is, Sturdivant was not the victim of excessive force at the hands of law enforcement. Accordingly, the trial court correctly held that the officers were shielded by qualified immunity and were, therefore, entitled to summary disposition under MCR 2.116(C)(7).

## B. ASSAULT AND BATTERY

Plaintiffs next argue that the trial court erroneously dismissed their intentional tort claim of assault and battery. Plaintiffs contend that the trial court erred when it concluded that the officers acted in good faith. We disagree.

In *Odom*, 482 Mich at 461, our Supreme Court held that "governmental employees enjoy qualified immunity from intentional torts." A governmental employee must raise governmental immunity as an affirmative defense and, thereafter, "establish that (1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial in nature." *Id.* Further, our Supreme Court has described a lack of good faith as including "malicious intent, capricious action or corrupt conduct" and "willful and corrupt misconduct." *Id.* at 475, quoting *Veldman v Grand Rapids*, 275 Mich 100, 113; 265 NW 790 (1936).

Plaintiffs do not contest that the officers were acting in the course and scope of their employment. Nor do they challenge the discretionary nature of their actions. Instead, plaintiffs argue that questions of fact exist with respect to whether the officers' actions were in good faith. We disagree.

The uncontroverted evidence established that Murdock acted in good faith. Murdock's stated reason for deploying his Taser was that he acted in response to Sturdivant rushing toward the front door with the intent to force it closed on the officers. "[T]he standard in evaluating the governmental immunity question is not whether, when viewing the facts objectively with the benefit of hindsight" the use of force was justified. *Latits v Phillips*, 298 Mich App 109, 116; 826 NW2d 190 (2012). Rather, the "standard is a subjective one from the perspective of defendant with respect to whether he was acting in good faith." *Id.* The facts support Murdock's stated intent, and plaintiffs presented no evidence to establish any other motivation.

More specifically, plaintiffs presented no evidence that Murdock acted with malice. Plaintiffs assert that had the court "reviewed all of the record evidence, and drawn the many inferences from that record evidence," the court would have been satisfied that there remained an issue of material fact regarding the existence of bad faith. However, plaintiffs failed to identify what evidence would have supported an inference of malice or bad faith on the part of the officers. Plaintiffs rely only on their own opinion, unsupported by objective facts, that the officers' actions were racially motivated. They argue that inferences of racism can be inferred from the fact that officers were dispatched to investigate a fight between two white men, and they abandoned this investigation to ticket a black man for jaywalking. First, there is no evidence in the record that the officers knew or were told that the fight was between two white men. Moreover, the record is completely devoid of any evidence that the officers took any action on account of plaintiffs' race. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) (quotation marks and citation omitted). In this case, there is no evidence indicating that the officers had any malice toward

plaintiffs. Accordingly, the trial court also properly dismissed the assault and battery intentional tort claim.

Plaintiffs do not address the liability of a city for the intentional torts of its employees. In any event, governmental employers cannot be held vicariously liable for the intentional tortious acts of their employees. *Payton v Detroit*, 211 Mich App 375, 393; 536 NW2d 233 (1995).

### C. FALSE ARREST AND FALSE IMPRISONMENT

The trial court did not err in granting defendants' motion for summary disposition of plaintiffs' false arrest or false imprisonment claims brought both under state law and § 1983. Because no genuine issue of material fact existed, summary disposition was proper under MCR 2.116(C)(10).

Plaintiffs argue that Sturdivant's arrest was illegal and in violation of his constitutional rights because the arrest was effectuated in the absence of probable cause. Plaintiffs assert that the trial court, when concluding that probable cause existed, only considered the self-serving affidavits of the police officers. Plaintiffs argue that the trial court improperly made credibility determinations and failed to view the evidence in the light most favorable to plaintiffs. We conclude, however, that the trial court did not err when it granted summary disposition to defendants on plaintiff's false arrest or false imprisonment claims.

A false imprisonment claim under state law has been defined by this Court as an unlawful restraint on a person's liberty or freedom of movement. *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 17; 672 NW2d 351 (2003). A false arrest is an illegal or unjustified arrest. *Id.* at 18. "To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause." *Id*. Moreover, whether the plaintiff could have actually been convicted is immaterial because actual innocence is not an element of false arrest. *Id*. Similarly, with respect to plaintiffs' claims under § 1983, "an arrest without probable cause violates the Fourth Amendment." *Klein v Long*, 275 F3d 544, 550 (CA 6, 2001).

The trial court dismissed plaintiffs' false arrest claims based on a finding of probable cause. Probable cause to believe that a crime has been committed by an individual "is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that the accused is guilty of the offense charged." *Peterson Novelties, Inc*, 259 Mich App at 19 (citations omitted). Moreover, "probable cause is not capable of being precisely defined; rather it is a commonsense concept dealing with practical considerations of everyday life that must be viewed from the prospective of reasonable and prudent persons, not legal technicians." *Id*. Similarly, the United States Court of Appeals for the Sixth Circuit has, in the context of a § 1983 claim, held that probable cause to make an arrests exists when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Klein*, 275 F3d at 550 (citation omitted). Probable cause must be assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vison of hindsight." *Id*. (citation omitted).

Sturdivant was charged with, but acquitted of, hindering and obstructing a police investigation. To support a conviction for resisting or obstructing a police officer pursuant to MCL 750.81d(1), the prosecutor must demonstrate that (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties, and (3) that the officer's actions were lawful. *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014). Physical obstruction of an officer is unnecessary; hindering an officer in the process of a criminal investigation is sufficient. *People Pohl*, 207 Mich App 332, 333; 523 NW2d 634 (1994).

Considering the nature of the charged offense and the facts as the officers knew them to be at the time of Sturdivant's arrest, we conclude that the officers had probable cause to arrest Sturdivant for hindering and obstruction. The evidence established that just before the arrest, the officers had been questioning several individuals on the street. One of these individuals, Dawuan, fled from the officers when he was asked to produce identification. He then ran into his nearby home, and when the officers attempted to pursue Dawuan into the home into which he fled, they were met with active resistance from at least two individuals in the home. Sturdivant admitted that he had left the front of the house and positioned himself near the front door. When the officers succeeded in entering the home, according to the officers, Sturdivant ran at them in an attempt to assist in closing the door and preventing the officers' entry. These facts indicate that there was probable cause to arrest Sturdivant on obstruction charges.

Plaintiffs argue that the trial court ignored the fact that Sturdivant denied charging the door in an effort to assist his sister. However, "the fact that a person may actually be innocent of a charge does not establish that probable cause did not exist for that person's arrest." *Peterson Novelties*, 259 Mich App at 18-19. Contrary to plaintiffs' assertions, Sturdivant's testimony to the effect that he did not attempt to close the door does not give rise to a question of fact when determining the question of probable cause to arrest. Accepting plaintiffs' position as true, probable cause for an arrest could not be challenged merely by asserting lack of culpability.

Even if a question of fact existed with respect to whether there existed probable cause to arrest Sturdivant, we would conclude that the officers were entitled to qualified immunity. In *Odom*, 482 Mich at 481, the Supreme Court noted that for purposes of immunity, "[t]he mere existence of probable cause is not the proper inquiry." *Id*. It then noted that "[a] police officer would be entitled to immunity under *Ross*[2] if he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken." *Id*. In this case, there was no evidence presented that the officers did not honestly believe that they had probable cause to arrest Sturdivant.

Because plaintiffs cannot show that the arrest was illegal, that is, that the arrest was not based on probable cause, Sturdivant cannot prevail on a claim of false arrest or false

---

[2] *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984).

imprisonment. Therefore, the trial court did not err when it held that defendants were entitled to summary disposition on these claims.

## D. MALICIOUS PROSECUTION

Plaintiffs pleaded a claim of malicious prosecution under § 1983 premised on a violation of the Fourth Amendment and a similar claim under state law. The trial court found no questions of material fact with respect to whether there existed probable cause to arrest Sturdivant and to issue a citation to Hitson. It therefore granted summary disposition on the malicious prosecution claims pursuant to MCR 2.116(C)(10). Plaintiffs argue that the trial court erred by dismissing Sturdivant's malicious prosecution claim[3] because it improperly made credibility determinations and failed to view the evidence in the light most favorable to plaintiffs when resolving this claim. We disagree.

A claim of malicious prosecution under § 1983 is premised on a violation of the Fourth Amendment. *Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 389; 838 NW2d 720 (2013). To sustain a claim of malicious prosecution under § 1983, a plaintiff must show that (1) defendant influenced or participated in the decision to prosecute the plaintiff; (2) there was a lack of probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure, and (4) the criminal proceeding must have been resolved in the plaintiff's favor. *Id.* at 389-390, citing *Sykes v Anderson*, 625 F3d 294, 308-309 (CA 6, 2010).

Similarly, the tort of malicious prosecution under state law requires a showing that (1) the defendant initiated a criminal prosecution against the plaintiff, (2) the criminal proceeding was resolved in the plaintiff's favor, (3) the person who maintained the prosecution lacked probable cause, and (4) "the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Matthews v Blue Cross & Blue Shield of Mich*, 456 Mich 365, 378; 572 NW2d 603 (1998). Thus, Michigan law includes a malice element not included in a malicious prosecution claim under § 1983. Notably, a plaintiff is required to present some evidence that the impact of a defendant's misstatements and falsehood in their investigatory material "extended beyond the plaintiffs' initial arrest and ultimately influenced the Plaintiffs' continued detention." *Sykes*, 625 F3d at 316.

At the onset, we note that plaintiffs did not present any evidence relative to the manner in which the officers participated in the decision to prosecute plaintiffs. Indeed, Sturdivant and Hitson both denied having any knowledge of the manner in which the decision was made. There is no evidence to support any assertion that the officers provided false information to the prosecutor's office in an attempt to influence the decision to file criminal charges against plaintiffs. Plaintiffs' failure to come forward with evidence of this nature is fatal to their malicious prosecution claims.

---

[3] Plaintiffs have not addressed this issue with respect to Hitson; consequently, they have abandoned any claim that the trial court erred by dismissing any malicious prosecution claim brought on her behalf. See *McIntosh*, 282 Mich App at 484.

Plaintiffs ignore the foregoing shortcomings in their proofs, and instead focus on the issue of probable cause. Because there was probable cause to arrest Sturdivant, however, we conclude that the trial court properly dismissed plaintiffs' malicious prosecution claims.[4]

## E. ETHNIC INTIMIDATION

Plaintiffs' complaint also alleged a claim for ethnic intimidation, in violation of MCL 750.147b. This statute provides:

> (1) A person is guilty of ethnic intimidation if that person maliciously, and with specific intent to intimidate or harass another person because of that person's race, color, religion, gender, or national origin, does any of the following:
>
> (a) Causes physical contact with another person.
>
> (b) Damages, destroys, or defaces any real or personal property of another person.
>
> (c) Threatens, by word or act, to do an act described in subdivision (a) or (b), if there is reasonable cause to believe that an act described in subdivision (a) or (b) will occur.

Plaintiffs contend that the officers' actions on the day in question were deliberate, malicious, and carried out with the specific intent to intimidate and harass plaintiffs because of their race. The only "evidence" offered in support of this proposition is Sturdivant's and Hitson's unsupported opinions that the officers were racist, and the suggestion that racial animus can be inferred from the fact that the officers were dispatched to investigate a fight between two white men and they abandoned this investigation to "issue a black man a citation for jaywalking."

First, there is nothing in the record to support the assertion that the officers knew that they were dispatched to investigate a fight between two *white* men. Therefore, plaintiffs begin with a faulty premise. Further, despite plaintiffs' representations to the contrary, the audio recordings do not substantiate plaintiffs' claims that the officers expressed racial epithets. More significantly, the patrol car videos indisputably confirm that the officers were diverted from investigating the neighbor's altercation because Dawuan and Jameal refused to obey a direct order by the officer to not walk in the direction where Murdock was speaking with Sinom. The officers did not simply abandon their investigation to harass two men for jaywalking. They switched the focus of their investigation because those two men disregarded the officers' orders. Plaintiffs have failed to come forth with any competent evidence that the officers' conduct was racially motivated. Accordingly, the trial court did not err when it granted summary disposition of plaintiffs' ethnic intimidation claims.

---

[4] With respect to the malicious prosecution claims, we note once again that plaintiffs have only addressed this issue with respect to Sturdivant's claims. Consequently, any challenge to the trial court's order dismissing Hitson's malicious prosecution claim has been abandoned. See *McIntosh,* 282 Mich App at 484.

## F. MUNICIPAL LIABILITY AND GROSS NEGLIGENCE

The trial court also dismissed plaintiffs' gross negligence claim and their claim that defendant, city of Eastpointe, maintained policies and procedures that violated plaintiffs' constitutional rights. Plaintiffs have not challenged the trial court's dismissal of these two claims in their brief on appeal. As previously indicated, the failure to brief the merits of an allegation of error is deemed abandonment of an issue. See *McIntosh*, 282 Mich App at 484. In any event, neither claim is viable. Accordingly, the trial court did not err when it granted summary disposition in this regard.

A municipality may be held liable under § 1983 for maintaining unconstitutional polices that result in injury to a plaintiff. *Johnson v VanderKooi*, 319 Mich App 589, 622; 903 NW2d 843 (2017). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking official, and practices so persistent and widespread as to practically have the force of law." *Connick v Thompson*, 563 US 51, 61; 131 S Ct 1350; 179 L Ed 2d 417 (2011). Plaintiffs have not identified any policy or practice from which their injuries arose. As the trial court recognized, plaintiffs did not even request the training records of the police officers. Plaintiffs quite simply failed to present any evidence in support of the municipal liability claim.

The trial court also properly dismissed plaintiffs' gross negligence claim under MCR 2.116(C)(8). With regard to negligent torts, pursuant to MCL 691.1407(2), governmental employees are not entitled to immunity if their conduct amounts to gross negligence that is the proximate cause of injury or damage. Although plaintiffs pleaded gross negligence, all of their claims allege intentional conduct, i.e., assault and battery, false imprisonment, malicious prosecution. "Elements of intentional torts may not be transformed into gross negligence claims." *Norris v Lincoln Park Police Officers*, 292 Mich App 574, 582; 808 NW2d 578 (2011). Plaintiffs' cannot "avoid the protection of immunity by artful pleading." *Latits*, 298 Mich App at 120 (quotation marks omitted).

Affirmed. Defendants are entitled to costs as the prevailing parties. See MCR 7.219(A).

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood

-11-